**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| STEVEN WRONKO and COLLENE WRONKO, Husband and Wife, | |
| Plaintiffs, | Civ. No. 16-2288 |
| v. | **OPINION** |
| NANCY MARTIN, et al., | |
| Defendants. | |

THOMPSON, U.S.D.J.

## **INTRODUCTION**

This matter comes before the Court upon three Motions for Rule 11 Sanctions. (ECF Nos. 70, 72, 73.) These Motions are brought by Defendants Michael Baltazar, Borough of Helmetta, Devon Gannon, Helmetta Police Department, Helmetta Regional Animal Shelter, Chad Lockman, Robert Manney, Richard Recine, Gene Scheicher, Michael Cielesz, Richard Cielesz, and Nancy Martin (collectively, "Moving Defendants"), and all rely on the same brief. (ECF Nos. 70, 72, 73.) Plaintiffs Steven Wronko and Collene Wronko oppose. (ECF No. 77.) The Court has decided the Motions on the written submissions of the parties, pursuant to Local Civil Rule 78.1(b). For the reasons stated herein, Moving Defendants' Motions for Rule 11 Sanctions are denied, but the Court will issue an order for Plaintiffs to show cause why the Court should not sanction Plaintiffs using its inherent powers.

## **BACKGROUND**

This case arises from activities surrounding Plaintiffs' protest of alleged mistreatment of animals at Defendant Helmetta Regional Animal Shelter. (ECF No. 1-2.) Plaintiffs claim that

1

Defendants prohibited them from documenting abuse and neglect; defamed them; and targeted them for selective arrest, harassment, prosecution, and sentencing in order to quell Plaintiffs' protests. (*Id.*) On March 24, 2016, Plaintiffs filed a nine-count complaint against Defendants in the Superior Court of New Jersey, Law Division, Middlesex County. (*Id.*) Defendant Borough of Helmetta (the "Borough") removed the case to this Court on April 22, 2016. (ECF No. 1).

The present Motions concern an email purportedly sent by Defendant Mayor Nancy Martin to Defendant Helmetta Police Director Robert Manney, along with Defendant Manney's purported response (the "email"). (*Id.* ¶¶ 42–59; Compl., Ex. A, ECF No. 1-2.) In the email, Defendant Martin allegedly instructed Defendant Manney to ensure that Defendant Police Officer Devon Gannon issued as many summonses as possible against Plaintiffs. (*Id.*) Specifically, the email shows Defendant Martin ordering that summonses be issued for cursing and that Plaintiffs be stopped when they drive through town. (*Id.*) The email also stated that Defendant Martin would speak with a prosecutor and a judge to make sure that charges proceed against Plaintiffs. (*Id.*) The email forms an important, but not the only, basis for Plaintiffs' claims, and was attached as an exhibit to the Complaint. (*Id.*)

Plaintiffs maintain that the Borough had sent them a copy of the email in response to one of Plaintiffs' New Jersey Open Public Records Act ("OPRA") requests. (Steven Wronko Dep. 281:1–10, ECF No. 77-2.) Plaintiff Collene Wronko claims that she found the email on March 12, 2016, while searching through documents on her computer. (Collene Wronko Dep. 88:5–10, ECF No. 70-13.) She then gave a copy of the email to her attorney, Edward Harrington Heyburn, who used the email two days later to seek recusal of a New Jersey Municipal Court judge before whom Plaintiffs were appearing in a criminal matter. (Heyburn Cert. ¶¶ 16–17, ECF No. 70-14.) Later, when Attorney Heyburn was unable to find an original PDF file of the email, he asked

Plaintiffs to "locate how they received [it]." (*Id.* ¶¶ 20–22.) About two weeks after that, Plaintiffs produced a manila envelope with a printed copy of the email inside. (¶¶ 24–27.)

Moving Defendants claim that the email is a forgery. The Borough's retained copy of its OPRA response does not contain the email. (Br. in Supp. of Mot. Sanctions ("Defs.' Br.") at 15–16, ECF No. 70; Bohinski Decl. ¶ 8, ECF No. 70-27.) Moreover, the email was not clearly responsive to the OPRA request through which it was allegedly provided. (Bohinski Decl., Ex. A at 1–2, ECF No. 70-28.) Although the email would have been responsive to some of Plaintiffs' other OPRA requests, it was not included in them. (Olitt Decl., Exs. Q–S, ECF Nos. 70-20 to 70-22.) Defendants' counsel also retained CyanLine LLC, a computer forensic consulting firm, to determine whether the email was genuine. (Defs.' Br. at 17; Olitt Decl., Ex. T, ECF No. 70-23.) CyanLine could find no trace of the email and noted several inconsistencies between the formats of this email and undisputedly genuine emails. (Defs.' Br. at 18–21; Olitt Decl., Ex. T.) Other than repeating Colenne Wronko's assertions as to how she found the email, Plaintiffs point to no evidence showing that the email is genuine. (Pls.' Br. Opp'n at 16–18, 35, ECF No. 77.)

On the basis of Plaintiffs' inclusion of the email in the Complaint, Moving Defendants moved for sanctions under Federal Rule of Civil Procedure 11 on July 19, 2018. (ECF Nos. 70, 72, 73.) Specifically, Moving Defendants seek (1) dismissal of the case, (2) payment of attorney's fees and costs to Defendants, and (3) a monetary penalty paid to the Court. (*Id.*) Following a briefing schedule set by the Court (ECF No. 76), Plaintiffs timely opposed (ECF No. 77), and Moving Defendants replied (ECF Nos. 78–80).[1] This motion is presently before the Court.

---

[1] Michael Cielesz and Richard Cielesz's Reply (ECF No. 80) was filed on September 11, 2018, which was untimely. However, this Reply consisted only of a one-page statement that no brief is

3

## **LEGAL STANDARDS**

Rule 11 of the Federal Rules of Civil Procedure states:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support, or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

Fed. R. Civ. P. 11(b)(3). "[T]he court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1).

A district court also has the inherent power to sanction, separate from its authority under Rule 11 or any other rule or statute. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991). "When the Rules or pertinent statutes are 'up to the task,' they should be used. When they are not, a trial court may turn to its inherent sanctioning power, but should exercise that power with caution." *Klein v. Stahl GMBH & Co.*, 185 F.3d 98, 110 (3d Cir. 1999); *see also Chambers*, 501 U.S. at 44 ("Because of their very potency, inherent powers must be exercised with restraint and discretion." (internal citation omitted)). In exercising its inherent authority, the court must first "consider the conduct at issue and explain why the conduct warrants sanction." *Republic of Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 74 (3d Cir. 1994). Then, "having evaluated the conduct at issue, the district court must specifically consider the range of permissible sanctions and explain why less severe alternatives to the sanction imposed are inadequate or inappropriate." *Id.* The sanction of attorney's fees requires a finding of bad faith. *Landon v. Hunt*, 938 F.2d 450, 454 (3d Cir. 1991) (requiring bad faith for assessment of attorney's fees);

---

necessary pursuant to Local Civil Rule 7.1(d)(4) because these Defendants rely on the Reply Brief (timely) submitted by their codefendants. As the untimely Reply supplies no additional arguments, its untimeliness is immaterial.

*Republic of Philippines*, 43 F.3d at 74 n.11 (cabining *Landon* to attorney's fees cases). The sanction of pre-trial dismissal requires the court to consider (1) the extent of the party's personal responsibility; (2) prejudice to the adversary caused by the party's behavior; (3) the party's history of similar conduct; (4) whether the conduct was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, and (6) the meritoriousness of the party's claim or defense. *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984) (applying these factors where counsel failed to meet court-imposed deadlines); *Knoll v. City of Allentown*, 707 F.3d 406, 409–10 (3d Cir. 2013) (applying these factors where sanctions would effectively lead to pre-trial dismissal of claims).

## **DISCUSSION**

Moving Defendants argue that Plaintiffs' filing the Complaint violated Rule 11. But the Complaint was filed in the Superior Court of New Jersey, and Rule 11 does not address behavior in state court. *Edwards v. GMC*, 153 F.3d 242, 245 (5th Cir. 1998); *Bisciglia v. Kenosha Unified Sch. Dist. No. 1*, 45 F.3d 223, 227 (7th Cir. 1995); *Stiefvater Real Estate, Inc. v. Hinsdale*, 812 F.2d 805, 809 (2d Cir. 1987). [2] The Complaint therefore provides no basis for sanctions under Rule 11.[3]

State procedural rules apply to actions taken in state court. New Jersey Court Rule 1:4-8 is similar to Rule 11, and Rule 1:4-8(a)(3) closely parallels the language of Rule 11(b)(3). But these rules have two differences that are significant here. First, Rule 1:4-8 permits only monetary

---

[2] Rule 11 prohibits "later advocating" pleadings and other papers that lack evidentiary support, so later advocacy in federal court could prompt Rule 11 sanctions. Fed. R. Civ. P. 11(b); Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment. But the present Motion is based on the initial Complaint, not on any later action by Plaintiffs constituting continued advocacy.
[3]

sanctions, N.J. Ct. R. 1:4-8(d), while Rule 11 sanctions "may include nonmonetary directives," Fed. R. Civ. P. 11(c)(4). Second, Rule 1:4-8 imposes a continuing duty to correct or withdraw factual allegations that lack evidentiary support, N.J. Ct. R. 1:4-8(a)(3); *LoBiondo v. Schwartz*, 199 N.J. 62, 98 (2009), while Rule 11 imposes no such duty, Fed. R. Civ. P. 11(b); *Pensiero v. Lingle*, 847 F.2d 90, 95 (3d Cir. 1988) (citing *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 482 (3d Cir. 1987)).

Whether a federal court may or should impose sanctions based on violations of state procedural rules is disputed. *See* Gregory P. Joseph, Sanctions § 5(A)(2)(f) (4th ed. 2008). Setting aside the question of whether this Court has the power to apply 1:4-8 sanctions, the Court declines to do so in this instance, for two reasons. First, no party has moved for sanctions under Rule 1:4-8. Second, New Jersey Rule 1:4-8 does not contemplate the sanction of dismissal, for which Defendants have moved. Rule 1:4-8 would therefore not allow the Court to consider the full gamut of conceivable sanctions sought. Third, deploying Rule 1:4-8 would require the Court to determine whether Plaintiff's counsel lacked a reasonable belief that the email was genuine at the time the Complaint was filed. *See LoBiondo*, 199 N.J. at 99–100. Without such a finding, the Court would need to determine, as a matter of apparent first impression, whether Rule 1:4-8's continuing duty to withdraw factual allegations continues after the case is removed to federal court. *Sua sponte* application of New Jersey procedural rules would therefore create more problems than it would solve.

As stated above, the Court may apply sanctions according to its inherent authority. But Due Process requires that the party to be sanctioned be given "notice of the legal rule on which the sanctions would be based, the reasons for the sanctions, and the form of the potential sanctions." *In re Tutu Wells Contamination Litig.*, 120 F.3d 368, 379 (3d Cir. 1997) (citing

*Simmerman v. Corino*, 27 F.3d 58, 64 (3d Cir. 1994)). Specifically, the party must have notice of what factors the court will consider so that the party has a chance to address those factors. *Tutu Wells*, 120 F.3d at 379–80.

Moving Defendants' Motions are explicitly premised on Rule 11, not on the court's inherent powers. Plaintiffs therefore have not had notice that the Court will consider bad faith when deciding the sanction of attorney's fees, *Landon*, 938 F.2d 454, or that the Court will consider the six *Poulis* factors when deciding the sanction of dismissal, *Knoll*, 707 F.3d 406, 409–10; *see also Poulis*, 747 F.2d at 868 (enumerating the factors). Without this basic requirement of Due Process having been met, sanctions based on the Court's inherent powers would be premature. In order to provide adequate notice to Plaintiffs, the Court will issue an order to show cause why the Court should not exercise its inherent powers to sanction plaintiffs.

## CONCLUSION

For the foregoing reasons, Moving Defendants' Motions for Rule 11 Sanctions are denied, and the Court will issue an order to show cause why the Court should not exercise its inherent powers to sanction Plaintiffs. Appropriate Orders will follow.

Date:  9/24/2018                                          */s/ Anne E. Thompson*
                                                         ANNE E. THOMPSON, U.S.D.J.