**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| STEVEN WRONKO and COLLENE WRONKO, Husband and Wife, | |
| Plaintiffs, | Civ. No. 16-2288 |
| v. | **OPINION** |
| NANCY MARTIN, *et al.*, | |
| Defendants. | |

THOMPSON, U.S.D.J.

## **INTRODUCTION**

This matter comes before the Court upon two Motions for Reconsideration: one filed by Defendants Borough of Helmetta ("Borough"), Robert Manney, Michael Baltazar, Devon Gannon, Chad Lockman, Richard Recine, and Gene Scheicher (collectively, "Borough Defendants") (ECF No. 114), and the other filed by Defendant Nancy Martin (ECF No. 115). Plaintiffs Steven Wronko and Collene Wronko (collectively, "Plaintiffs") oppose. (ECF No. 119.) The Court has decided this matter on the written submissions of the parties, pursuant to Local Civil Rule 78.1(b). For the reasons stated herein, Defendants' Motions are granted, and the Court will amend its Summary Judgment Order (ECF No. 110) accordingly.

## **BACKGROUND**

The facts of this case are familiar to the parties and will not be reiterated in full here. (*See generally* Op. at 2–9, ECF No. 109 (providing a more detailed background).) Defendant Nancy Martin was the Mayor of Defendant Borough, Defendant Manney was the Police Director, and all other Borough Defendants were police officers. Plaintiffs allege that Defendants attempted to

1

prohibit them from documenting abuse and neglect at the Helmetta Regional Animal Shelter and retaliated against them for doing so. They alleged a number of constitutional and common law violations. On January 25, 2019, all parties moved for summary judgment. (ECF Nos. 93–96.) On February 21, 2019, the Court denied summary judgment altogether for Plaintiffs and granted summary judgment for some Defendants on some Counts. (Order, ECF No. 110.) As the Court summarized in its Opinion, the following claims remained outstanding after summary judgment:

- On Counts I (free speech) and II (free assembly and petition), Plaintiffs retain claims against Defendants Manney, Baltazar, Lockman, and Recine for preventing Plaintiff Steven Wronko from videorecording; against Defendants Baltazar and Gannon for threatening arrest; against Defendant Baltazar for arresting Plaintiff Steven Wronko; and against Defendants Borough, Manney, and Martin for *Monell* liability.
- On Count III (due process), Plaintiffs retain a claim against Defendant Borough for retaliation.
- On Count VI (unconstitutional policymaking), Plaintiffs retain claims against Defendants Manney and Martin.
- On Count VIII (civil conspiracy), Plaintiffs retain claims against Defendants Borough, Manney, and Martin.

(Op. at 25.)

On March 7, 2019, Borough Defendants moved for reconsideration of the Summary Judgment Order. (ECF No. 114.) Defendant Martin separately moved for reconsideration on the same day. (ECF No. 115.) Plaintiffs opposed both Motions on March 19, 2019. (ECF No. 119.) Borough Defendants replied on March 20, 2019. (ECF No. 123.)[1] Defendant Martin did not file a reply. The Motions are presently before the Court.

## **LEGAL STANDARD**

"The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906 (3d Cir.

---

[1] Additionally, the parties stipulated (ECF No. 124) and the Court ordered (ECF No. 126) that Defendant Gannon be dismissed with prejudice from the case.

2

1985). Reconsideration is an extraordinary remedy that is to be granted "very sparingly." *E.g.*, *Friedman v. Bank of Am., N.A.*, 2012 WL 3146875, at *2 (D.N.J. Aug. 1, 2012). Filed pursuant to Rule 59(e) of the Federal Rules of Civil Procedure and Local Civil Rule 7.1(i), a motion for reconsideration may be based on one of three separate grounds: (1) an intervening change in controlling law; (2) new evidence not previously available; or (3) a clear error of law or prevention of manifest injustice. *N. River Ins. Co. v. CIGNA Reins. Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995) (internal citation omitted).

A motion for reconsideration is not an opportunity to raise new matters or arguments that could have been raised before the original decision was made. *E.g.*, *Bowers v. NCAA*, 130 F. Supp. 2d 610, 613 (D.N.J. 2001). Nor is it an opportunity to ask the Court to rethink what it has already thought through. *E.g.*, *Oritani S & L v. Fidelity & Deposit*, 744 F. Supp. 1311, 1314 (D.N.J. 1990). Rather, a motion for reconsideration may be granted only if there is a dispositive factual or legal matter that was presented but not considered that would have reasonably resulted in a different conclusion by the court. *E.g.*, *Champion Labs., Inc. v. Metex Corp.*, 677 F. Supp. 2d 748, 750 (D.N.J. 2010). "Mere disagreement with a court's decision normally should be raised through the appellate process and is inappropriate on a motion for [reconsideration]." *United States v. Compaction Sys. Corp.*, 88 F. Supp. 2d 339, 345 (D.N.J. 1999).

## DISCUSSION

Defendants provide some meritorious reasons for reconsideration. First, the Court did not address punitive damages in its Opinion or Order. Defendants argue that punitive damages are inappropriate in this case (Borough Defs.' Mot. at 22), and Plaintiffs agree (Opp'n at 13). The Court will order that judgment is granted for all Defendants on all Counts with regard to punitive damages.

Second, Defendants point out that the Opinion and Order contained a discrepancy as to Defendant Scheicher on Counts I and II. (Borough Defs.' Mot. at 2 n.1.) The text of the Opinion made clear that Defendant Scheicher was not entitled to summary judgment because he "prevented Plaintiff Steven Wronko from entering public places on several occasions because [Plaintiff Steven Wronko] was attempting to record matters of public import in a public place" and "a reasonable jury could find facts showing that Defendant[] . . . Scheicher violated Plaintiff Steven Wronko's clearly established right [to record]." (Op. at 13.) However, the Opinion's section heading (*id.* at 12), its concluding section on remaining claims (*id.* at 21), and the Order (Order at 2) stated that summary judgment was granted for Defendants Scheicher on Counts I and II. The Court will ameliorate this discrepancy by vacating the judgment. Accordingly, these claims against Defendant Scheicher remain viable.

Third, Defendants ask that judgment be granted for all Defendants against Plaintiff Collene Wronko on Counts I, II, VI, and VIII. (Borough Defs.' Mot. at 3–4; Def. Martin's Mot. at 3.) Plaintiff Collene Wronko did not videorecord, nor was she arrested or threatened with arrest. Therefore, the only cognizable violation that remains for her is based on her claims of retaliation. (*See* Op. at 14–15 (First Amendment retaliation); *id.* at 17 (retaliation under the Due Process Clause).)

The Court previously found that the law on retaliation was not clearly established, so qualified immunity is appropriate for individual Defendants as to Plaintiff Collene Wronko. (*Id.* at 14–15.) Qualified immunity applies here not only for the claim of retaliation itself (Counts I and II), but also for derivative claims of unconstitutional policymaking (Count VI) and civil conspiracy (Count VIII). Judgment will therefore be granted for all individual Defendants against Plaintiff Collene Wronko. However, municipalities are not entitled to qualified

immunity, *Owen v. City of Independence*, 445 U.S. 622, 650–51 (1980), so Plaintiff Collene Wronko maintains claims against Defendant Borough.

On other issues, the Court will not overturn its previous decisions. Defendants argue that summary judgment should have been granted for Defendant Recine because of his minimal—or possibly non-existent—involvement in escorting Plaintiff Steven Wronko out of the municipal building on August 4, 2014. (Borough Defs.' Mot. at 8–10.) The Court's previous Opinion explained that, "Whether Defendant Recine participated in escorting [Plaintiff Steven Wronko] out is disputed," and cited to the record for support. (Op. at 4 (internal citations omitted).) This finding was not clearly erroneous and will not be modified here.

Defendants also claim that the Court erred in its analysis of qualified immunity concerning the right to record. The Court cited *Ramos v. Flowers*, 56 A.3d 869, 881 (N.J. Super. Ct. App. Div. 2012) for the proposition that "the New Jersey state constitution confers a right to record for the purposes of making a documentary, and this right has been clearly established since at least 2006." (Op. at 13.) Defendants argue that this characterization of *Ramos* is too broad. (Borough Defs.' Mot. at 6 .) They argue that *Ramos* provided only "a clearly established right to videotape *gang activities* and *interaction of police with gang members outside in public areas* for the purpose of making a documentary on '*that topic*.'" (*Id.* (emphasis in original).) By contrast, they claim that this case deals with different asserted rights, namely "to videotape animals and conditions inside an animal shelter" and to videotape "mailboxes and information on walls inside a municipal building that also housed a police department and municipal court." (*Id.*) Despite Defendants' disagreement, the Court's reading of *Ramos* was not clear error.

Finally, Defendant Martin argues that she was not a policymaker and therefore cannot be liable for unconstitutional policymaking (Count VI) or civil conspiracy (Count VIII). (Def.

Martin's Mot. at 4–5.) The Court's Opinion held that a reasonable jury could find Defendant Martin implemented a policy because she sent an email to the Borough Administrator that identified Plaintiff Steven Wronko by name and stated that he recorded at the animal shelter and posted an employee's picture on Facebook. (Op. at 7, 16–17.) That email also said,

> I recall that no one is authorized to take photos in public buildings. . . . I have a big issue with this. I am asking . . . that all officers are made aware of this ugly situation and the need for our employees to be safe. I was told that we could contact the prosecutor's office to see if this site can be taken down? Can this be looked into?

(*Id.* at 7.) In her Motion for Reconsideration, Defendant Martin argues:

> [The email] is not a directive, not an order. It raises questions that may ultimately lead to a policy being formulated, but this listing of problems is not the policy. The policy is determined after the questions are raised. The email orders nothing. It just sets the groundwork for further review and action.
>
> In this case, a request for further information that might lead to a policy was made when Martin asked "Can this be looked into?"[] In addition she has an issue that she thinks might be decided best by the prosecutor's office. She is not telling anyone what to do. Rather she is suggesting that a policy might be beneficial.

(Def. Martin's Mot. at 4.) The Court maintains that a reasonable jury could disagree with this characterization and find that the email is evidence of a policy. The Court's conclusion was not clear error.

## **CONCLUSION**

For the foregoing reasons, Defendants' Motions for Reconsideration are granted. An appropriate Order will follow.

Date:   3/27/19                                        */s/ Anne E. Thompson*
                                                                 ANNE E. THOMPSON, U.S.D.J.